### CHAMPLAIN CONST. CO. v. O'BRIEN et al.

### O'BRIEN et al. v. CHAMPLAIN CONST. CO. et al.

#### (Circuit Court, D. Vermont. July 22, 1902.)

In Equity. On settlement of decree. For former opinions, see 104 Fed. 930, 107 Fed. 333, 117 Fed. 271.

WHEELER, District Judge. The parties have been heard upon settlement of the decree as to items which might be thought to have been overlooked, and upon exhibits filed with the clerk as a part of the record by leave of court. The 5 cents per yard of rubble embankment to be paid by the defendant Clement should be for 941,403 yards, amounting to $47,070.15, instead of for 1,016,125, as amounting to $50,806.15, which were wrong figures, taken from an erroneous

exhibit. McHale & O'Connor were subcontractors for masonry at same prices. They had done work prior to September 1, 1900, amounting to $54,398.70, for which they had been paid 90 per cent. by the contractors, and on which 10 per cent., amounting to $5,439.87, had been reserved by the company. The September estimates had not been paid, either by the company to the contractors, or by the contractors to them, when the work was taken over October 12th, and the company made a contract directly with them for continuing their work to include that done in September and after, and estimates and payments were made directly to them for such work, notwithstanding a letter, in the nature of objections, of October 20, 1900, not produced, and shown but by a letter from the company to the contractors of October 22d, which is one of the exhibits filed with the clerk. By a letter to the treasurer of the company, the contractors withdrew all objection to payment of the 10 per cent. reserved on work before September to these subcontractors, whereupon that amount was paid to them, and they, by a general release, also filed as an exhibit with the clerk, discharged the company from all claims. The estimates to these subcontractors under the new contract are said to be included with the final estimate as of October 12th to the contractors, and therefore it is claimed that the amounts paid thereon to these subcontractors should be treated as payments to the contractors. The 10 per cent. reserved on work before September was so paid upon the direction of the contractors that apparently it should be treated as a payment to them. What was estimated to them, under the contract, up to October 12th, accrued to and was due to them, and the company had no right to make, and could not discharge itself by, payment to any one else, especially after notice to the contrary. The subcontractors are not parties here, and matters between them and the contractors, or between them and the company, cannot be adjusted or passed upon without them.

Allusion has been made to a supposed error in respect to use of dump cars mentioned before as deducted from estimates, as if the company was left without the credit of half their value for the use. But the treasurer charged the use against cash payments, and what was so charged too much is corrected by deduction from the payments, leaving the right amount included in the payments allowed and reckoned. The charges against the contractors were not committed to the discretion of the chief engineer.

O'Brien has testified that when he was complaining to the president and chief engineer about the measurement of the rubble embankment, he said: "Mr. Clement, I will put a gang of men on there, and if I can find that there is more due us than what you have allowed, I shall insist in your paying for the engineers," and that Mr. Clement said: "I will pay for the engineers any way you put them on," and that he put on engineers under that arrangement, resulting in the joint measurement and increased allowance by the chief engineer. The contractors claim that these engineering expenses have been overlooked, and should be allowed. They were not work done under the contract, nor extra work directed by the chief engineer, or reported for the ensuing estimates as such, according to the contract.

If anything, it was a personal agreement by the defendant Clement. There is no allegation in the bill as to this, as there is in respect to the agreement by him to pay 5 cents per yard additional on the rubble embankment, on which issue was joined by denial in the answer, but it is a mere incidental statement in the testimony as to how the joint measurement came about and was carried on. There is nothing in the case as it stands to apply the testimony to.

Some other claimed corrections of the contractors are covered by the chief engineer's estimates under the contract, and some are for extra work not ordered by him, or reported to him according to the contract. Some stone and stone cutting claimed for may belong in the subsequent estimates to McHale & O'Connor, and some allowances claimed by the company are not made to appear to be other than those deducted by the treasurer from payments made upon the estimates, or those before allowed. The correction indicated would seem to make the result as near right as practicable upon the case as presented. They increase the net payments to $790,333.13, and leave due from the company, $112,624.62, and from defendant Clement, $47,070.15, as of October 12, 1900, and from the company for use of plant, $30,000, as of July 3, 1900, when delivery of it over commenced.

Decretal order modified accordingly.